IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TOWERNORTH DEVELOPMENT, LLC,

Plaintiff,

v.

BAYFIELD COUNTY and
BAYFIELD COUNTY BOARD OF ADJUSTMENT,

Defendants.

OPINION and ORDER

25-cv-964-jdp

---

Plaintiff TowerNorth Development, LLC applied for a conditional-use permit to build a telecommunications tower in the Town of Russell, which is in Bayfield County. The County's Planning and Zoning Committee voted to approve the application. But an organization called Citizens for Land Use Transparency and Integrity appealed the Committee's decision to defendant Bayfield County Board of Adjustment, which reversed the Committee's decision and denied TowerNorth's application.

TowerNorth brings federal claims under the Telecommunications Act of 1996, and state-law claims under Wisconsin's mobile-tower-siting law, seeking declaratory relief and injunctive relief. TowerNorth contends that it is entitled to build the telecommunications tower because the Board issued its decision after the deadlines provided by federal and state law. It also contends that the Board's decision is not supported by substantial evidence.

A few motions are before the court, but the main one is TowerNorth's motion for a preliminary injunction, Dkt. 2, which the parties and the court agreed to treat as a motion for summary judgment, Dkt. 19. The material facts are not in dispute given that this court's review is limited to the record of the Board's action, and the case turns on the interpretation of federal and state statutes. The court will grant summary judgment for TowerNorth because its

application was deemed approved as a matter of state law when the Board failed to issue its decision by the pertinent deadline.

BACKGROUND

The court draws the following facts from the parties' proposed findings of fact, Dkt. 32, and from the record underlying the Board's decision, Dkt. 3, Exs. 2–4, which TowerNorth submitted in support of its motion for summary judgment.

Let's get our geographical bearings. The Town of Russell is located on Wisconsin's northernmost tip; it makes up the tail end of the Bayfield Peninsula, which juts out into Lake Superior. The road through Russel is part of the Wisconsin Lake Superior Scenic Byway, a 70-mile stretch of road that runs along the lake's shoreline. And just off the shore from Russell are the Apostle Islands, a national lakeshore comprised of 21 islands. Non-party Verizon Wireless provides wireless service around Russell. But Verizon says there is a gap in its network there. Verizon hired TowerNorth to find property for a new telecommunications tower to improve cellular service in the area.

The following timeline will matter for the court's analysis. On May 20, 2025, TowerNorth applied for a conditional-use permit to site and build a telecommunications tower at 88260 Turner Road in Russell. Bayfield County needed additional information from TowerNorth, so its application was not deemed complete until June 20, 2025. Bayfield County's Planning and Zoning Committee considered and approved TowerNorth's application at a public hearing on July 21, 2025. The Committee issued its written decision on July 31, 2025. The proposed intervenor in this case, Citizens for Land Use Transparency and Integrity, appealed the Committee's decision to Bayfield County's Board of Adjustment on August 19,

2025. The Board considered the appeal at a public hearing on October 30, 2025, during which it voted to reverse the Committee's decision and denied TowerNorth's application. The Board issued its written decision on TowerNorth's application on November 19, 2025.

## ANALYSIS

Congress enacted the Telecommunications Act to "encourage the rapid deployment of new telecommunications technologies." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005) (citation omitted). To serve this objective, the Act restricts the ability of state and local governments to regulate the siting and building of telecommunications towers. *See City of Arlington v. F.C.C.*, 569 U.S. 290, 294 (2013); *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 300 (2015). Wisconsin's mobile-tower-siting law, Wis. Stat. § 66.0404(2)(d), places additional limits on local governments by requiring them to follow statewide standards for the siting and building of telecommunications towers. *Eco-Site, LLC v. Town of Cedarburg*, 2019 WI App 42, ¶ 11, 388 Wis. 2d 375, 933 N.W.2d 179.

TowerNorth moves for summary judgment on its claims under the Telecommunications Act and under Wisconsin's mobile-tower-siting law. But the court begins its analysis with the motion to intervene by Citizens for Land Use Transparency and Integrity, Dkt. 25.

### A. Motion to intervene

Citizens for Land Use Transparency and Integrity is a group of individuals that own or live in properties near where TowerNorth wants to build the telecommunications tower.

Dkt. 26, Ex. 1, at 1.[1] Federal Rule of Civil Procedure 24 governs a third party's ability to intervene. A third party may intervene either as of right or with the court's permission.

To intervene as of right, a third party must show that existing parties do not adequately represent the third party's interest. Fed. R. Civ. P. 24(a)(2). When the third party has the "same goal" as existing parties, the intervenor must show that some conflict exists that would warrant its intervention. *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019). A third party has the "same goal" as existing parties when their interests are "genuinely identical." *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 688 (7th Cir. 2023) (cleaned up). Citizens shares the same goal as the Board: they both want the court to uphold the Board's decision to deny TowerNorth's application because they contend that the tower would negatively affect property values. *See* Dkt. 26, at 4. Citizens also makes the same arguments as the Board: the deadlines provided by federal and state law do not apply, and the Board's decision is supported by substantial evidence. *See* Dkt. 26, Ex. 1. Because Citizens' interests are identical to the Board's interests, there is no conflict warranting intervention as of right.

To intervene with the court's permission, a third party must (1) file a timely motion to intervene; and (2) show either that it has a conditional right to intervene pursuant to a federal statute, or that it has a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b). As for the first requirement, Citizens was reasonably prompt in filing its motion: it learned about this case on December 17, 2025, and it filed its motion to intervene on January 6, 2026. Dkt. 27, ¶ 11. As for the second requirement, Citizens raises the same defenses as the Board. Allowing Citizens to intervene would not unduly delay this case

[1] Citations to filings from the docket use the page numbers assigned by the court's electronic filing system, not the page numbers in the original document.

or prejudice the rights of the original parties because Citizens attached its brief as an exhibit to its motion, and TowerNorth responded to Citizens' arguments in its reply brief, *see* Dkt. 31. Simply put, it just makes sense to allow Citizens to intervene, especially given that Citizens appealed the Committee's decision granting TowerNorth's application to the Board.

The court will therefore grant Citizens' motion to intervene.

**B. Motion for summary judgment**

TowerNorth's motion for summary judgment presents two main issues: (1) whether Bayfield County complied with the deadlines provided by the Telecommunications Act and by Wisconsin's mobile-tower-siting law; and (2) if not, whether Bayfield County's failure to comply with those deadlines means that TowerNorth's application was deemed approved as a matter of law. TowerNorth also contends that the Board's decision is not supported by substantial evidence, but the court need not address that issue because the procedural issues are dispositive.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The material facts are not in dispute given that this case rises and falls on the record underlying the Board's decision, so the court must determine which party is entitled to judgment as a matter of law.

TowerNorth also moves to strike the Board's sur-reply brief, Dkt. 34, and the court will grant the motion because the court did not ask the Board for a sur-reply brief, and nothing in TowerNorth's reply justified a further submission from the Board.

**1. Whether Bayfield County complied with the deadlines**

In Wisconsin, local governments reviewing applications to build telecommunications towers must comply with deadlines provided by the Telecommunications Act and by

Wisconsin's mobile-tower-siting law. TowerNorth contends that Bayfield County failed to comply with both deadlines. Dkt. 5, at 30–33.

**a. Telecommunications Act**

Under the Telecommunications Act, local governments must "act" on applications to build telecommunications towers "within a reasonable period of time after the request[s] [are] duly filed with such government or instrumentality." 47 U.S.C. § 332(c)(7)(B)(ii). Congress did not define the term "reasonable period of time" when it enacted the Act. Instead, the issue of whether a local government acts within a reasonable period of time depends on the "nature and scope" of the application under review. *Id.*

Although Congress left the meaning of the term "reasonable period of time" unresolved, the Federal Communications Commission (FCC) has promulgated a regulation addressing what constitutes a reasonable period of time to act. Under 47 C.F.R. § 1.6003(c)(1)(iv), it is presumptively reasonable for a local government to take 150 days to act on an application to build a telecommunications tower. If a local government takes longer than 150 days to review an application (plus any days during which the review period was tolled because an application was materially incomplete), then the local government is presumed *not* to have acted within a reasonable period of time. *See* 47 C.F.R. § 1.6003.

Both sides assume that the FCC regulation remains binding, even after the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), limited the deference that courts may give agency interpretations of statutes.[2] Under *Loper Bright*,

[2] In a footnote, the Board suggests that 47 C.F.R. § 1.6003's validity is "questionable" and "could be ripe for review" after *Loper Bright*. Dkt. 23, at 16–17 n.5. The Board has forfeited this argument by failing to develop it. *United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989).

deference may still apply when Congress expressly delegates authority to the agency to "regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,' such as 'appropriate' or 'reasonable.'" 603 U.S. at 395 (citation omitted). Congress delegated authority to the FCC to "prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions [of the Telecommunications Act]." 47 U.S.C. § 201(b); *see City of Arlington*, 569 U.S. at 293. So it appears that deference is still appropriate.

In any event, *Loper Bright* did not "call into question prior cases that relied on the *Chevron* framework," which are "still subject to statutory *stare decisis* despite [the Court's] change in interpretive methodology." *Loper Bright Enters.*, 603 U.S. at 412. The Supreme Court relied on the *Chevron* framework in *City of Arlington v. FCC*, 569 U.S. 290 (2013), which involved the FCC's interpretation of its authority to implement the Telecommunications Act. The FCC relied on its authority under 47 U.S.C. § 201(b) to issue a ruling interpreting the term "within a reasonable period of time" in § 332(c)(7)(B)(ii) to set a presumptive 150-day deadline for reviewing applications to build telecommunications towers. *See id.* at 294–95. The Court held that the FCC's interpretation of its own regulatory authority was entitled to deference under the *Chevron* framework. *Id.* at 307. The Court reasoned that Congress "unambiguously vested the FCC with general authority to administer the [Telecommunications Act] through rulemaking and adjudication, and the agency interpretation at issue was promulgated in the exercise of that authority." *Id.* Because *City of Arlington* held that the FCC's interpretation of its authority to interpret the term "within a reasonable period of time" in 47 U.S.C. § 332(c)(7)(B)(ii) was entitled to *Chevron* deference, and because *Loper Bright* does not call *City of Arlington* into question, the court will apply the FCC regulation here.

Under 47 C.F.R. § 1.6003, the "shot clock period" for reviewing an application is the sum of the presumptive 150-day deadline plus any tolling period.[3] TowerNorth filed its application on May 20, 2025, which started the shot clock for defendants to review TowerNorth's application. 47 C.F.R. § 1.6003(e). The shot clock was paused on May 30, 2025, which is when Bayfield County asked TowerNorth for additional information, and the shot clock resumed on June 17, 2025, which is when TowerNorth provided that information. *See id.* § 1.6003(d) (tolling period). Bayfield County therefore needed to complete its review of TowerNorth's application by November 4, 2025. The Board issued its decision denying TowerNorth's application on November 19, 2025, which is after the shot-clock period expired.

The Board resists this conclusion, contending that it did "act" on TowerNorth's application on or before the end of the shot-clock period. The Board argues that the phrase "act . . . within a reasonable period of time" in 47 U.S.C. § 332(c)(7)(B)(ii) means that a local government must *begin* reviewing an application within 150 days; it does not require a local government to issue a final decision within that period. *See* Dkt. 23, at 17–18. The Board does not cite any authority to support its argument. In any event, the Board's argument is inconsistent with basic principles of statutory interpretation.

Courts give statutory language its "ordinary, contemporary, common meaning," *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (citation omitted), considering the language in the context of the statutory scheme as a whole, *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 536 (7th Cir. 2026). The plain meaning of "act" in the context of

[3] The term "shot clock" in 47 C.F.R. § 1.6003 is an allusion to a shot clock in basketball, which is a "timing device that displays a countdown of the time within which the team possessing the ball must attempt a field goal." Rule No. 7: Shot Clock, NBA Rulebook, Nat'l Basketball Ass'n, https://official.nba.com/rule-no-7-24-second-clock/ (last accessed Aug. 14, 2026).

§ 332(c)(7)(B)(ii) is to issue a decision on an application to build a telecommunications tower. *See* Webster's Third New Int'l Dictionary 20 (1981) (defining "act" as "to give a decision or award (as by vote of a deliberative body or by judicial decree)"). This plain meaning also comports with the phrase "failure to act," which appears in a related provision, 47 U.S.C. § 332(c)(7)(B)(v). Under § 332(c)(7)(B)(v), "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof . . . may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." The FCC has determined that "failure to act" means the failure to "issue a decision on a[n] . . . application within the presumptively reasonable time period[.]" *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd. 9088, 9148 (Sept. 27, 2018). Following the FCC's interpretation, local governments "act" under 47 U.S.C. § 332(c)(7)(B)(ii) when they issue a decision on an application.

Because Bayfield County did not issue a decision on TowerNorth's application before the shot clock period expired, it is "presumed not to have acted within a reasonable period of time." 47 C.F.R. § 1.6003(a). The Board does not contend that the nature and scope of TowerNorth's application entitled it to additional time to complete its review, 47 U.S.C. § 332(c)(7)(B)(ii), so the court concludes that Bayfield County did not comply with the deadline under the Telecommunications Act.

**b. Wisconsin's mobile-tower-siting law**

Wisconsin's mobile-tower-siting law prescribes steps that a local government must take within 90 days of receiving a complete application to build a telecommunications tower. Under Wis. Stat. § 66.0404(2)(d), a local government must:

> 1. Review the application to determine whether it complies with all applicable aspects of the political subdivision's building code and, subject to the limitations in this section, zoning ordinances.
>
> 2. Make a final decision whether to approve or disapprove the application.
>
> 3. Notify the applicant, in writing, of its final decision.
>
> 4. If the decision is to disapprove the application, include with the written notification substantial evidence which supports the decision.

Wis. Stat. § 66.0404(2)(d). If a local government fails to take these steps before the deadline, the applicant "may consider the application approved." *Id.*

The statutory analysis is straightforward. Bayfield County received a complete application from TowerNorth on June 17, 2025. Bayfield County therefore needed to make a final decision on TowerNorth's application and notify TowerNorth in writing of that decision by September 15, 2025. The Board did not issue its written decision until November 19, 2025, which is after the 90-day deadline. Bayfield County therefore did not comply with the deadline under Wisconsin's mobile-tower-siting law.

The Board contends that the relevant "final decision" for the mobile-tower-siting law is not the *Board's* decision, but rather, the *Committee's* decision. The Committee issued its written decision approving TowerNorth's application on July 31, 2025, which was before the deadline. The Board argues that the term "final decision" is a term of art that refers to a decision that is appealable, not to the last decision made by Bayfield County. *See* Dkt. 23, at 18–19. Indeed, the term "final decision" is traditionally understood to "distinguish appealable and nonappealable lower court decisions." *Perera v. Siegel Trading Co., Inc.*, 951 F.2d 780, 783 (7th Cir. 1992) (discussing 28 U.S.C. § 1291). And under Wisconsin law, the general rule is that "technical words and phrases and others that have a peculiar meaning in the law shall be

construed according to such meaning." Wis. Stat. § 990.01(1). To determine the meaning of legal terms of art, Wisconsin courts consult legal dictionaries, such as Black's Law Dictionary. *Sanders v. State of Wis. Claims Bd.*, 2023 WI 60, ¶ 14, 408 Wis. 2d 370, 992 N.W.2d 126. Black's Law Dictionary defines the term "final" to mean "not requiring any further judicial action by the court that rendered judgment to determine the matter litigated." *Final*, Black's Law Dictionary (2024). The entry also states that "once an order, judgment, or decree is final, it may be appealed on the merits." *Id.* That's all to say that the Board's argument about the meaning of the term "final decision" is a plausible reading of Wisconsin's mobile-tower-siting law.

The court nevertheless concludes that the Board's interpretation, though plausible, is not the best reading of the statute. The rules for statutory interpretation under federal law are consistent with the rules under Wisconsin law. *Liebert v. Millis*, No. 23-cv-672-jdp, 733 F. Supp. 3d 698, 706 (W.D. Wis. 2024). Wisconsin courts start with the statutory text, giving the language its plan meaning, and they consider the statutory text within the context of the overall statutory scheme. *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 2004 WI 58, ¶¶ 45–46, 271 Wis. 2d 633, 681 N.W.2d 110. The plain meaning of "final decision" in the context of the mobile-tower-siting law is the local government's ultimate conclusion on whether to approve an application. *See* Webster's Third New Int'l Dictionary 851 (1981) (defining "final" as "not to be altered or undone" and "not to be processed further"). This plain meaning is most consistent with the mobile-tower-siting law as a whole, which applies to "political subdivisions." A "political subdivision" is a "city, village, town, or county." Wis. Stat. § 66.0404(1)(p). If the term "final decision" referred to the first appealable decision, as the Board contends, then a political subdivision could satisfy the requirements of the mobile-tower-siting law as long as

the decisionmaker for its first level of review issued an appealable decision within the 90-day deadline, no matter how many additional levels of review the political subdivision put into place. This is an absurd result that is at odds with the purpose of the mobile-tower-siting law, which is to limit local control over telecommunications towers and speed up local-government review of applications to build those towers.

The Board argues that the court's interpretation would lead to an equally absurd result: it would set an "unreasonable expectation" for local governments to review in short order applications to build telecommunications towers. *See* Dkt. 23, at 19. The Board's argument is undermined by the state court of appeals' decision in *State ex rel. United States Cellular Operating Company LLC v. Town of Fond du Lac*, 2025 WI App 21, 415 Wis. 2d 720, 19 N.W.3d 627.

In *Town of Fond du Lac*, U.S. Cellular applied for a conditional-use permit to build a telecommunications tower; its application was deemed complete on April 20, 2023. 2025 WI App 21, ¶ 5. U.S. Cellular's application was subject to two levels of review: (1) the Town's Planning Commission, which initially voted to recommend that the Town Board deny U.S. Cellular's application; and (2) the Town Board, which ultimately voted to accept the recommendation and deny the application. *Id.*, ¶¶ 7–9. But U.S. Cellular did not receive the Town Board's written decision until July 27, 2023, which was after the mobile-tower-siting law's 90-day deadline. *Id.*, ¶ 11.

The court of appeals held that the mobile-tower-siting law "clearly and unambiguously" requires political subdivisions to take all the specified steps within 90-days of deeming an application to be complete. *Id.*, ¶ 28. The court also held that the law requires political subdivisions to actually comply with the specified steps. *Id.*, ¶ 37. The court reasoned that allowing political subdivisions to substantially comply with the steps rather than actually

comply with them would "thwart the purpose of [the mobile-tower-siting law]," which is "for applicants to receive a timely written notice containing the substantial evidence and reasoning for the political subdivision's rejection of the application." *Id.*, ¶ 36.

The court of appeals also addressed implicitly the "unreasonable expectation" argument that the Board makes here:

> The Town may not like the consequence the legislature chose for a political subdivision's failure to comply with the dictates of Wis. Stat. § 66.0404(2)(d), but it is our job to apply the plain meaning of the statute, not override the legislature's enacted laws. . . . [T]he Town's failure to satisfy each of the four actions set forth in § 66.0404(2)(d) 1-4 was itself a decision the Town chose to make. The Town's inaction, in effect, changed its decision from disapproval to approval. The Record makes clear that the Town Board knew the consequences for failing to meet the ninety-day deadline, and yet it still failed to act. The fact that it no longer controls the [conditional-use permit] decision is a direct result of the Town's failure to comply with the plain text of the statute.

*Id.*, ¶ 49.

Because Bayfield County did not issue its ultimate conclusion on whether to approve TowerNorth's application before the 90-day deadline, it failed to comply with the deadline in Wisconsin's mobile-tower-siting law.

**2. The effect of Bayfield County's failure to comply with the deadlines**

TowerNorth contends that Bayfield County's failure to comply with the deadlines under the Telecommunications Act and Wisconsin's mobile-tower-siting law means that its application was deemed approved as a matter of law. *See* Dkt. 5, at 30–33. TowerNorth seeks declaratory relief and injunctive relief. The Board did not address the remedy issue in its response, so it has forfeited any arguments to the contrary. *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014). In any event, the court will address the effect of

Bayfield County's failure to comply with the deadlines provided by federal and state law in turn.

**a. Telecommunications Act**

Congress did not specify a consequence when it enacted the Act; instead, it merely provided aggrieved individuals with a right of action to challenge a local government's final action or failure to act. 47 U.S.C. § 332(c)(7)(B)(v). But the Seventh Circuit has observed that Congress's conferral of a right to sue is "presumed to entitle a successful plaintiff to the usual remedies, which include damages as well as injunctive relief," and that "[a]ided by the presumption, the enforcement scheme of the Telecommunications Act is complete." *PrimeCo Pers. Comm'ns, Ltd. P'ship v. City of Mequon*, 352 F.3d 1147, 1152–53 (7th Cir. 2003) (citation omitted). *But see City of Rancho Palos Verdes*, 544 U.S. at 122 ("The remedies available, moreover, perhaps do not include compensatory damages.").

Most courts have held that the "appropriate remedy is injunctive relief in the form of an order to issue the relevant permits." *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999); *see Preferred Sites, LLC v. Troup Cnty.*, 296 F.3d 1210, 1222 (11th Cir. 2002) ("We conclude an injunction ordering issuance of a permit is an appropriate remedy for a violation of [the Act]."); *New Par v. City of Saginaw*, 301 F.3d 390, 399–400 (6th Cir. 2002), *abrogated on other grounds by T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293 (2015); *see also Nextel Partners Inc. v. Kingston Twp.*, 286 F.3d 687, 695 n.6 (3d Cir. 2002) (collecting cases). Other courts have held that remand might be an appropriate remedy in some cases, such as when a local government violates the Act's requirement that a denial by "in writing." *Cellco P'ship v. City of Elkhart Bd. of Zoning Appeals*, 765 F. Supp. 3d 763, 768–75 (N.D. Ind. 2025); *see Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 24 (1st Cir. 2002)

("While we can conceive of circumstances in which a remand may be in order—for example, an instance of good faith confusion by a board that has acted quite promptly—this case is not a candidate for remand to the board.").

It is not clear, however, whether mandatory injunctive relief is an automatic result. Some courts seem to presume that an order granting the permit is automatic. For example, in *Primeco Personal Communications v. City of Mequon*, Judge Lynn Adelman of the Eastern District of Wisconsin ordered the City to issue the conditional-use permit because "no useful purpose would be served by remanding for further proceedings" and "[s]uch an order would simply further delay resolution of the issue." 242 F. Supp. 2d 567, 582 (E.D. Wis. 2003), *aff'd*, 352 F.3d 1147 (7th Cir. 2003); *see also Iowa Wireless Servs., L.P. v. City of Moline*, 29 F. Supp. 2d 915, 923 (C.D. Ill. 1998) (ordering City to issue permit "with all deliberate speed"); *Omnipoint Comm'ns, Inc. v. Common Council of City of Peeksill*, 202 F. Supp. 2d 210, 227 (S.D.N.Y. 2002) ("[T]he appropriate remedy is immediate injunctive relief directing the issuance of a special permit, building permit and any other applicable permits or approvals necessary."); *see also Brehmer v. Plan. Bd. of Town of Wellfleet*, 238 F.3d 117, 121 (1st Cir. 2001) ("[A]pplicable law does not require that the Planning Board hold further hearings in a [Telecommunications Act] case before issuing the special permit.").

Other courts have concluded that courts must apply the traditional equitable factors to determine whether injunctive relief is warranted. *See, e.g.*, *Cellco P'ship v. City of Milwaukee*, No. 23-cv-1581, 2024 WL 329001, at *11 (E.D. Wis. Jan. 2024) (irreparable harm and public interest warranted equitable relief); *cf. Towerco 2013, LLC v. Berlin Twp. Bd. of Trustees*, 110 F.4th 870, 881–89 (6th Cir. 2024) (reversing grant of preliminary injunction, primarily due to no likelihood of success on the merits). For example, in *TowerNorth Development, LLC v.*

*City of Geneva*, Judge Rebecca R. Pallmeyer of the Northern District of Illinois held that the plaintiffs' claim for unreasonable delay was moot because the City issued a decision denying the plaintiffs' application after the lawsuit was filed. No. 22-C-4124, 2023 WL 6388257, at *11 (N.D. Ill. Sep. 30, 2023). Judge Pallmeyer reasoned that injunctive relief was "no longer necessary" because "an injunction would, at most, order the City to act" by issuing a decision on whether to approve an application. *Id.* at *6.

There is reason to believe that applying the traditional equitable factors is the proper course of action. The general rule is that a plaintiff seeking a permanent injunction must satisfy those factors before a court may grant such relief. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Indeed, the Seventh Circuit has held, albeit, in a different context, that courts are typically "obligated to conduct an equitable balancing of harms before awarding injunctive relief, even under an environmental statute which specifically authorizes such relief." *United States v. Bethlehem Steel Corp.*, 38 F.3d 862, 867 (7th Cir. 1994). It might be that injunctive relief is usually warranted in Telecommunications Act cases—that's the FCC's view. 33 FCC Rcd. at 9149–50 ("[W]e expect that courts will typically find expedited and preliminary and permanent injunctive relief warranted."). But even if injunctive relief is *usually* warranted, it is not *always* warranted, which is another reason why considering the traditional equitable factors is likely necessary. *See LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 944 (7th Cir. 2019) (courts must consider equitable factors even when "it will usually be the case that injunctive relief is warranted").

TowerNorth attempts to satisfy the traditional equitable factors in its opening brief. *See* Dkt. 5, at 29–70. The Board contends that TowerNorth is not entitled to injunctive relief because it cannot establish the irreparable harm factor. The Board argues that "there still

remains dispute[s] regarding whether residents lack sufficient cellular service." Dkt. 23, at 21. The Board also contends that the public interest weighs against injunctive relief because the proposed telecommunications tower is "incompatible with the area's rural character and fails to preserve and protect the natural beauty and dark skies of the area, including the Apostle Islands National Lakeshore." *Id.* at 7. This might be a case in which injunctive relief is not warranted under the Telecommunications Act.

In any event, the court need not decide whether TowerNorth is entitled to injunctive relief under the Telecommunications Act. As will be explained, Wisconsin's mobile-tower-siting law provides TowerNorth with the relief that it seeks.

**b. Wisconsin's mobile-tower-siting law**

Wisconsin's mobile-tower-siting law requires political subdivisions to complete the specified steps within the 90-day deadline, or "the applicant may consider the application approved." Wis. Stat. 66.0404(2)(d). The state court of appeals addressed this consequence in *Town of Fond du Lac*, in which the court held that a political subdivision's failure to comply with the requirements of the mobile-tower-siting law means that the application is "deemed approved by operation of law." 2025 WI App 21, ¶ 47. The court reasoned that "[t]his can only mean that U.S. Cellular was therefore entitled to proceed with the activity for which it sought approval in its application." *Id.*, ¶ 46. The court remanded the case to the circuit court with directions to enter an order granting U.S. Cellular declaratory relief. *Id.*, ¶ 50.

The same result follows here. TowerNorth's application for a conditional-use permit to build a telecommunications tower in Russell, Dkt. 3, Ex. 2, at 63–206, was deemed approved by operation of state law upon Bayfield County's failure to meet the 90-day deadline in the state mobile-tower-siting law. Under *Town of Fond du Lac*, this means that Bayfield County must

issue to TowerNorth a conditional-use permit to site and build its proposed tower, and that TowerNorth is entitled to proceed with siting and building the tower. The court will grant TowerNorth's request for declaratory relief under Wisconsin law. The court's declaration should be adequate to provide TowerNorth the remedy to which it is entitled; the court sees no need to issue a separate injunction order against the county.

## ORDER

IT IS ORDERED that:

1. Proposed-intervenor Citizens for Land Use Transparency and Integrity's motion to intervene, Dkt. 25, is GRANTED.

2. Plaintiff TowerNorth Development LLC's motion to strike defendant Bayfield County Board of Adjustment's sur-reply brief, Dkt. 34, is GRANTED.

3. TowerNorth's motion for a preliminary injunction, Dkt. 2, is construed as a motion for summary judgment, Dkt. 19, and the motion is GRANTED.

4. It is DECLARED that TowerNorth's application for a conditional-use permit to site and build a telecommunications tower at 88260 Turner Road in the Town of Russell is deemed approved by operation of Wis. Stat. 66.0404(2)(d), because Bayfield County did not make a final decision whether to approve or disapprove TowerNorth's application within 90 days of its receipt of a complete application. TowerNorth is entitled to proceed with the activity for which it sought approval in its application.

5. TowerNorth's motion for status conference, Dkt. 42, is DENIED as moot.

6. The clerk of court is directed to enter judgment for TowerNorth and close the case.

Entered August 31, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge